Herbert S. Sisson, as State Commissioner of Excise for the State of New York, *v.* 684 Bottles of Weiss Beer and 8 Bottles of American Pilsener Beer, John P. Kantak, Claiming.

(County Court, Onondaga County, February, 1918.)

Liquor Tax Law, § 33 — what deemed a "liquor" within meaning of — — rulings of United States internal revenue department — actions — judgments — state commissioner of excise.

> Under the rulings of the United States internal revenue department the sale at retail of the beverage known as "Weiss Beer" requires the payment of a retail liquor dealer's or retail malt dealer's special United States internal revenue tax.

> Such beverage because of its high alcoholic content indicated by chemical analysis must be deemed a "liquor" within the meaning of the Liquor Tax Law, the sale of which by one who has not paid the tax prescribed by law and obtained a liquor tax certificate is forbidden.

> Where in such circumstances the liquor is kept stored or deposited in a town in which traffic in liquor except by pharmacists on a physician's certificate is forbidden "for the purpose of unlawful sale or distribution within this state" it is subject to confiscation, and in an action instituted by the state commissioner of excise under section 33 of the Liquor Tax Law plaintiff is entitled to judgment forfeiting to the state said liquor which was seized pursuant to a warrant issued under said section 33 of the Liquor Tax Law.

Action tried before the court without a jury pursuant to stipulation.

Fred A. Baldwin and William A. Peckham, for State Excise Commissioner.

Ray B. Smith and James C. Setright, for claimant.

Cobb, J.   This action was instituted under section 33 of the Liquor Tax Law to procure a judgment forfeiting to the state certain alleged liquors taken from the possession of the claimant.

County Court, Onondaga County, February, 1918.   [Vol. 102.

On the 20th day of September, 1917, James Bullard, chief of police of the village of Manlius, N. Y., presented to the Onondaga county judge a verified complaint, alleging that claimant kept, stored and had deposited in premises known as the Terminal Hotel in Manlius, N. Y., certain liquors for the purpose of their unlawful sale and distribution within the state. Upon such verified complaint and accompanying affidavits a warrant was issued pursuant to section 33 of the Liquor Tax Law, directed to any peace officer of the state, commanding the search of such premises for spirits, wine, fermented or malt liquors, and the seizure and retention thereof, should any be found. The warrant required any person having any interest therein to show cause why such liquors should not be forfeited to the state of New York.

Pursuant to such warrant the chief of police of the village of Manlius seized, stored and has now in his possession 684 bottles of weiss beer and 8 bottles of American Pilsener beer, all taken from the premises occupied by claimant.

On the 5th day of October, 1917, John P. Kantak filed an answer to the aforesaid complaint claiming title to the property in question, and denying that said weiss beer was intoxicating or was a liquor within the meaning of the Excise Law of the state of New York. Claimant further alleged that he bought the weiss beer in good faith upon representations that same was a non-alcoholic or temperance beverage, and that in selling the same he had no intention of violating the excise laws of the state.

Upon the trial the following principal facts appeared: That in accordance with a vote of the qualified electors of the town of Manlius, traffic in liquor, except by pharmacists on a physician's certificate, was prohibited; that no liquor tax certificate had been

issued to claimant by the state of New York; that a special United States internal revenue tax stamp for the place and covering the period of the seizure of such property had been issued to claimant and was maintained and posted in the place where the alleged liquors were seized. An analysis by a competent chemist of one of the bottles of weiss beer taken from claimant's place under the warrant showed that it had an alcoholic content of two and seventeen one-hundredths per centum by weight and two and seventy-one one-hundredths by volume. The liquor contained sugar and fermentation was in progress while the test was being made, which was within two days after the seizure. The expert testified that all alcohol is produced by fermentation, even where the process is distillation; that the alcohol present in the bottle of weiss beer so analyzed was either the result of the fermentation of the contents of the bottle or was added alcohol. Precisely when fermentation had commenced, and to what extent it had gone forward after bottling, the expert was unable to say. The evidence of the chemist produced by the plaintiff was not disputed, and it was assumed that the bottle analyzed fairly represented the liquor seized.

Pursuant to stipulation plaintiff introduced in evidence a ruling of the United States commissioner of internal revenue made in 1883, and containing the following: " After the long practice of this office and its frequent decisions I do not feel at liberty, even if I doubted, to hold that weiss beer is not a fermented liquor within the meaning of the statutes of the United States, but I have no doubt upon the subject. I regard it as settled that weiss beer (certainly when its making has been completed) is unquestionably a fermented liquor. * * * My instructions to Collector Blake were based as follows: *First.* Upon the

decisions heretofore made that weiss beer is a fermented liquor from which the Government is entitled to its taxes, etc.    *    *    *."

From a ruling of the United States internal revenue department, No. 19385, the following is taken: " Root beer, a fermented liquor made from ' roots, barks, herbs, sugar and bread yeast,' if it is not similar to weiss beer or to any of the fermented liquors enumerated in section 3339, Revised Statutes, is not subject to tax under this section; nor is a special tax of a brewer required to be paid for its manufacture for sale."

A decision of the United States internal revenue department, No. 20233, made October 22, 1898, contains the following: " Hop Beer Tax and Special Tax. A fermented liquor made from hops and sugar and sold ·under the name ' hop beer,' or any other name, if it resembles in general character, taste, etc., the fermented malt liquor called ' weiss beer,' however small its alcoholic strength may be, is subject to tax under the first section of the war-revenue act, and persons who manufacture it for sale are required to pay special tax as brewers and tax on this beer, and also special tax as malt-liquor dealers for selling it in bottles."

Further in the same ruling with reference to " hop beer," weiss beer is referred to as follows: " Weiss beer being a fermented liquor made from malt and, therefore, being subject to the tax imposed upon beer by the provisions of the war-revenue act, notwithstanding the fact that its alcoholic strength is usually very small, sometimes being but one per cent."

The United States statutes governing the taxation of the liquor traffic have not remained unchanged during the years covered by these decisions, but the law as it stood on the day of the seizure in this case

would have required the payment of a tax in accordance with the foregoing rulings, and I do not think that any material change in this respect has been brought about by the United States statute which went into effect October 3, 1917.

From the foregoing rulings, which were introduced in evidence as rulings and decisions of the United States internal revenue department, and which were not contradicted or explained, the court is justified in assuming that the sale at retail of the beverage, which has long been known as weiss beer, is the sale of a product which, under such rulings, requires the payment of a retail liquor dealer's or retail malt dealer's special United States internal revenue tax.

The plaintiff asserts that the sale of the beer in question was unlawful and its seizure was, therefore, justified upon three grounds, and the parties have asked that each be separately passed upon.

The plaintiff's first contention is that weiss beer, such as was found in claimant's hotel, is a '' liquor '' within the meaning of the Liquor Tax Law of the state of New York; that without reference to the United States statutes or the rulings and decisions of the internal revenue department its sale in '' dry '' territory, or by one to whom no liquor tax certificate has been issued, is forbidden.

I find no decision dealing with this beverage and assume that its status, under the Liquor Tax Law, has not been passed upon by the courts of the state.

There is a class of beverages to which belong whiskey, brandy, rum and gin whose content and properties are so well known and understood that the courts have long taken judicial notice that they are intoxicating liquors. *Rau* v. *People,* 63 N. Y. 277. More recently it has been held that the courts should, in like manner, take judicial notice of the fact that lager beer is a fer-

County Court, Onondaga County, February, 1918. [Vol. 102.

mented and malt liquor within the meaning of the Liquor Tax Law. *People ex rel. Lanci* v. *O'Reilly,* 129 App. Div. 522, 526. Notwithstanding the rulings of the United States internal revenue department, extending over a period of more than thirty years, the nature and properties of weiss beer are not sufficiently well understood to justify a holding, without other proof, that it is a fermented or malt liquor. Whether the weiss beer in question was such became, therefore, a question of fact to be proven by the plaintiff.

The present Liquor Tax Law differs materially from former excise laws of this state with regard to the proof necessary to establish a violation. The earlier excise laws were, generally speaking, acts to suppress intemperance and regulate the sale of *intoxicating* liquors. Under those laws it became necessary to prove — often a difficult matter — that the liquors were strong, spirituous or intoxicating, as the case might be. Under the present law the intoxicating properties of the liquor need not be shown. " The term ' liquors ' as used in this chapter includes and means all distilled and rectified spirits, wine, fermented and malt liquors." Liquor Tax Law (Laws of 1909, chap. 39), art. 1, § 2; *People* v. *Cox,* 106 App. Div. 299, 303.

In the last mentioned case the defendant was convicted of selling liquor without a license. In writing the opinion of the court affirming the conviction Justice Chase said (p. 303) : " The jury found that the liquor sold by the defendant was malt rose, and the judgment is based on such finding. It appears from the evidence that malt rose is a beverage made to imitate lager beer, and that it has the same general color, taste and appearance as lager beer, and that it is bottled in the same way. The jury has found that the liquor sold contained from seventy-four-hundredths

to one and eighteen-hundredths per cent of alcohol. In the testimony of the manufacturer he gives the ingredients used by him in the concoction thereof. One of the ingredients is export beer, which he testified is a fermented malted liquor. The alcohol in the export beer used as one of the ingredients of malt rose is sufficient to make about eleven-hundredths of one per cent of alcohol in malt rose as bottled and sold. Among the other ingredients of malt rose are hop ale extract, consisting of the extract of hops, and of glucose to sweeten it, and also burned sugar and soapina. It appears that if these ingredients when mixed are exposed to the air that they will ferment, and as but eleven-hundredths of one per cent of alcohol was put into the malt rose in question the alcohol found therein, except such eleven-hundredths of one per cent, must have been the result of the fermentation of the concoction itself. The alcohol in malt rose was consequently in part added thereto, and in part formed therein. If the alcohol contained in the malt rose as sold was produced therein by fermentation of the ingredients forming it the beverage comes within the plain terms of the statutory definition of liquor. A construction of the act that would exclude from its terms all beverages that had not of themselves been rectified, distilled, fermented or malted would deprive the act of much of its value as a police measure.''

In view of the undisputed evidence of the chemist, to whose analysis and testimony reference has been made, and of the high alcoholic content of the beverage thus indicated, I have no hesitation in holding that the weiss beer taken from claimant's premises was a fermented liquor.

The sale of such weiss beer within the town of Manlius, or by one who had not paid the tax prescribed by law and obtained a liquor tax certificate,

was, therefore, forbidden. It was liquor "kept, stored or deposited for the purpose of unlawful sale or distribution within this state," and was subject to confiscation.

It is true, as urged by claimant, that the weiss beer was in a state of fermentation when analyzed, and that its precise alcoholic content at the time of seizure could not be known. In view of the fact that no counter analysis was offered by claimant or evidence given to show the alcoholic strength of the liquid at the time of bottling or at any later period, I feel justified in assuming that on the date of its seizure it was already a fermented liquor.

Plaintiff contends, in the second place, that the authorities were warranted in seizing the weiss beer, that was concededly kept for sale in the town of Manlius, for the reason that it was a liquor requiring the payment of a United States government tax, and that the sale of the same was unlawfully trafficking in liquors. Section 2 (subd. 6) of article 1 of the Liquor Tax Law provides: "Trafficking in liquors. The term 'trafficking in liquors,' as used in this chapter is * * * 6. The sale of less than five wine gallons of any preparation, compound or substance consisting in whole or in part of distilled or rectified spirits, wine, fermented or malt liquors, which, under the rulings and decisions of the United States internal revenue department, requires the payment of a retail liquor dealer's or retail malt liquor dealer's special United States internal revenue tax, by any person who has paid such tax for the place of such sale, and for the period in which the same occurs, or by any person whomsoever in a place for which such tax has been paid, and in which a retail liquor dealer's or a retail malt liquor dealer's special United States internal revenue tax stamp in force and effect is maintained or posted."

Irrespective of its exact alcoholic content weiss beer, as determined by the sample analyzed in this case, is " a substance consisting in whole or in part of distilled or rectified spirits, wine, fermented or malt liquors." As we have already seen it is a beverage which, under the ruling of the United States internal revenue department, requires the payment of the tax referred to in the statute. It was within the power of the state to define the liquors which could not be lawfully sold without a license, by reference to the United States governmental decisions. Of course it is not sufficient to show that a beverage known as weiss beer and requiring payment of a government tax is kept for sale or distribution. It is necessary to prove independently, as was done in this case, that the beverage consists in whole or in part of " distilled or rectified spirits, wine, fermented or malt liquors."

Plaintiff also calls attention to subdivision 4 of section 33 of the Liquor Tax Law as follows: " The payment of a retail liquor dealer's or retail malt liquor dealer's special United States internal revenue tax for the place and covering the period in which such liquors are seized, or the maintenance or posting in any place where such liquors are seized, of a retail liquor dealer's or retail malt liquor dealer's special United States internal revenue tax stamp in force and effect at the time of such seizure, or the posting, keeping or maintaining of a notice or sign of any kind on or about the premises where such liquors are seized indicating that liquors are there sold, kept or given away at any place where traffic is prohibited under the provisions of section thirteen of this chapter, or any place for which a liquor tax certificate under section eight of this chapter has not been issued, *shall be prima facie evidence that the liquors so seized, as aforesaid, were kept, stored and deposited in violation of the provisions of this section.*"

With reference to this provision also it is to be noted that proof must be made in the first instance that the beverages seized are " liquors " within the definition of the law. When liquors are seized from a place where traffic in liquor is prohibited the fact that a United States internal revenue tax has been paid or a stamp posted in the place of seizure renders proof of the purpose for which they were there kept, stored or deposited unnecessary. As in the present case the liquors were concededly kept for sale in prohibited territory by an unlicensed vendor the provision is unimportant.

Under either of the above provisions referring to the operations of the United States internal revenue department the case really rests upon substantive proof of the nature and constituents of the beverage in question. I have no doubt, as claimant urges, that he has acted in good faith, believing that he had the right to sell weiss beer as he was doing, but the plea of good faith is unavailing. The intent with which a person violates the provision of the Excise Law in question here is not important.

I therefore find that the liquors which have been seized were kept, stored and deposited for the purpose of unlawful sale and distribution within the state, and direct the entry of a judgment of forfeiture, which judgment shall provide for the delivery of such liquors and the vessels in which they are contained to the state commissioner of excise for destruction or sale as he may elect.

So far as the few bottles of American Pilsener beer are concerned, I am satisfied that they were kept for private use in claimant's family without any intention on his part to sell the same. The judgment should, therefore, provide for their return to claimant.

Judgment accordingly.